*Judge Lane
delivered the opinion of the court:
In 1818, Norton borrowed about eight hundred and fifty dollars from the Western Reserve Bank, for the payment of which he-procured Baldwin and Wheaden his indorsers.
Judgment was recovered in 1819 against Norton and his indorsers, in three separate suits, executions for which were in the hands of the sheriff in February, 1820. These several executions-were stayed by the agent for the plain tiff. On the 3d of May a conveyance of real estate was made to Perkins. On June 5, 1820, he executed a writing in the nature of a declaration of trust, in which it was agreed that if the title should prove good no further steps.should be taken to enforce collection until the land should be sold and the avails applied in payment, and tha't no sale should be-made" if Norton should pay one thousand dollars per annum:
The arrangement made in this wise was calculated to embrace the security, not of this debt only, but of another debt of Norton, of about three thousand dollars, on which Whittlesey and Remelewere indorsers.. If Norton should pay the one thousand dollars per an,num, the share of that debt to which Baldwin and Wheadenwere indorsers, which would be extinguished by it, would be about three hundred dollars per annum.
The matter rested in this situation until 1827, when the bank, brought their sci.fa. to revive the judgment against Baldwin and Wheaden, Norton having died in the interim. To enjoin this and. all further proceedings on the judgment, Baldwin and Wheadenhave brought these separate suits in chancery, claiming a discharge from liability and the entry of satisfaction, because time-has been given to the principal without their consent.
That time was given is not a matter of dispute. This suit was reserved under the impression that it presented the question whether, after the judgment against the surety, his relation, as-surety, does not cease, and his claims upon the creditor, arising-from such relation, are not extinguished.
But the question does not arise here. In February; 1820, whilestthe executions were in the sheriff’s hands, a letter was written by complainants to the bank, asking a stay of the execution! *252 against them, and using this language: “Wewould hope, at least, that Judge Norton might, with his property, pay what was mentioned or expected, viz: fifty dollars every sixty days, for one year, or to that amount; or whatever it might be, we wish he might do.”
In our opinion this letter plainly shows a request by the sureties to pursue the property of Norton as far as it could be made available; that some arrangement had been contemplated between .all concerned, by which Norton could pay three hundred dollars in one year, which these sureties desired to carry into execution. These terms necessarily imply a suspension of the existing process against the defendants, and the extension of credit to Norton •for some of the debt for a period longer than a year.
These conditions seem to be met by the proceedings in May ■and June. All Norton’s real estate was taken by the deed and . appropriated toward the payment of his debts, and the present plaintiff’s liabilities were provided for equally with Norton’s other indorsers. The evidence leads us to believe that this was the arrangement into which the plaintiffs desired the defendants to enter; the suits, therefore, afford no reason to raise the question intended to be reserved in this case.
The bill, as framed, rests the claim for relief upon the position ■that the defendant gave time to the principal without consent of the sureties. In this aspect there is no dase made for relief upon the facts; but as the facts show a trust fund created and an agreement. that steps should not be taken to collect the debt until the trust fund was exhausted, we are content to retain the bill, to in-quire into the condition of that fund, and appropriate it to satisfy the just claims of all the parties.
Judge Hitchcock, being a stockholder in the Western Reserve .Rank, did not sit.